## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

ANTHONY D. DAVIS,                    :   Case No. 3:19-cv-117
                                     :
      Plaintiff,              :
                                     :
                                     :   District Judge Walter H. Rice
vs.                                  :   Magistrate Judge Sharon L. Ovington
                                     :
COMMISSIONER OF THE SOCIAL           :
SECURITY ADMINISTRATION,             :
                                     :
      Defendant.              :

## REPORT AND RECOMMENDATIONS[1]

## I.    <u>Introduction</u>

Plaintiff Anthony D. Davis brings this case challenging the Social Security Administration's denial of his application for period of disability, Disability Insurance Benefits, and Medicare Coverage/Medicare-Qualified Government Employee.  He applied for benefits on December 1, 2015, asserting that he could no longer work a substantial paid job.  Administrative Law Judge (ALJ) Kevin R. Barnes concluded that he was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), and the administrative record (Doc. #6).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Barnes' non-disability decision.

## II.   Background

Plaintiff asserts that he has been under a "disability" since February 11, 2012. He was forty-five years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). He has a high school education. *See* 20 C.F.R. § 404.1564(b)(4).

### A.   Mary Ann Jones, Ph.D.

Dr. Jones examined Plaintiff on December 11, 2014. (Doc. #6, *PageID* #s 2148-55. Plaintiff reported to Dr. Jones that he is disabled due to physical impairments. *Id.* at 2149. He "characterized his mental health as fair, and he notes that he suffers from depression, irritability, social withdrawal, and difficulty coping with stress. He falls short of stating that he has mood swings, but he does describe himself as 'moody.'" *Id.* at 2150. Plaintiff reported that he visits a friend and watches TV during the day. He does almost all of the household chores including cleaning, laundry, and grocery shopping. His girlfriend and best fried help him with chores. *Id.* at 2152. He enjoys woodworking as a hobby. *Id.* Dr. Jones noted that Plaintiff was not using any psychotropic medication and that he was not involved with any ongoing psychological care or treatment. *Id.*

Dr. Jones noted that Plaintiff's body movements were slow and awkward. *Id.* at 2150-51. He ambulated with the use of a cane. *Id.* at 2151. His conversation was relevant and coherent, his stream of thought and affect were appropriate. *Id.* His

2

demeanor was resigned.  *Id.*  She noted that he presented as preoccupied with his

symptomatology but she found no evidence of delusional thinking, paranoid ideation,

hallucinations, or dissociative experiences.  *Id.*  She estimated that his intellectual

functioning was in the average range.  *Id.* at 2152.  Dr. Jones diagnosed pain disorder and

dysthymic disorder.  *Id.* at 2153.  She opined that Plaintiff would be able to understand,

remember, and carry out instructions in a work setting.  She found no significant

limitations in his ability to sustain concentration and attention or to maintain persistence

and pace to perform work-related duties; to interact with other persons, including co-

workers and supervisors; and to cope with normal work stress.  *Id.* at 2154-55.

        **B.**     **State Agency Record-Reviewing Psychologists**

     Three state agency psychologists—Katherine Fernandez, Psy.D.; Carl Tishler,

Ph.D.; and Denise Rabold, Ph.D.—reviewed Plaintiff's records.

     Dr. Fernandez reviewed Plaintiff's mental health record in January 2015.  *Id.* at

499-513.  She found that Plaintiff had two non-severe psychological impairments:

affective disorder and somatoform disorder.  *Id.* at 505.  Dr. Fernandez opined that he has

a mild restriction of activities of daily living; no difficulties in maintaining social

functioning; mild difficulties in maintaining concentration, persistence, or pace; and no

episodes of decompensation of extended duration.  *Id.*

     Dr. Tishler reviewed Plaintiff's mental health record in January 2016 and found

that he had one severe impairment—affective disorder.  *Id.* at 515-25.  However, when

evaluating Plaintiff's impairment under the "A" criteria of the listings he opined, "[t]here

is insufficient evidence to substantiate the presence of a disorder.  *Id.* at 521.  Further, he

indicated that there is insufficient evidence to assess the severity of Plaintiff's mental

health conditions from January 31, 2015 to June 30, 2015. *Id.*

Dr. Rabold reviewed Plaintiff's record in February 2016 and affirmed Dr.

Tishler's assessment. *Id.* at 527-36.

### III.   <u>Standard of Review</u>

The Social Security Administration provides Disability Insurance Benefits to

individuals who are under a "disability," among other eligibility requirements. *Bowen v.*

*City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1).  The term

"disability"—as defined by the Social Security Act—has specialized meaning of limited

scope.  It encompasses "any medically determinable physical or mental impairment" that

precludes an applicant from performing a significant paid job—i.e., "substantial gainful

activity," in Social Security lexicon.  42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at

469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines:

"whether the ALJ applied the correct legal standards and whether the findings of the ALJ

are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399,

406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir.

2007).  Review for substantial evidence is not driven by whether the Court agrees or

disagrees with the ALJ's factual findings or by whether the administrative record

contains evidence contrary to those factual findings.  *Gentry v. Comm'r of Soc. Sec.*, 741

F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.

2007).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard

is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.    <u>The ALJ's Decision</u>

As noted previously, it fell to ALJ Barnes to evaluate the evidence connected to Plaintiff's application for benefits.  He did so by considering each of the five sequential steps set forth in the Social Security Regulations.  *See* 20 C.F.R. § 404.1520.  He reached the following main conclusions:

Plaintiff last met the Title II insured-status requirements of the Social Security Act on June 30, 2015 for cash-benefit purposes and on December 31, 2016 for Medicare coverage purposes.

Step One:    Plaintiff did not engage in substantial gainful employment during the period of time from his alleged disability onset date, February 11, 2012, through his dates last insured, June 30, 2015 and December 31, 2016.

Step Two:    He has the severe impairments of lumbar spine disorder with residual of fusion surgery, type II diabetes mellitus, degenerative joint disease of both knees with residuals of bilateral knee-joint replacement surgery, and moderate obesity.

Step Three:    He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step Four:    His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work … subject to some additional limitations. The claimant could lift as much as ten pounds. He could stand and/or walk up to two hours during any given eight-hour workday. The claimant could sit up to six hours during any given eight-hour workday. He should have been provided the opportunity to alternate between sitting and standing at will (e.g., every 60 minutes). The claimant could not climb ladders, ropes, or scaffolds. He could not crouch, kneel, or crawl. The claimant could occasionally climb ramps or stairs. He could occasionally balance. The claimant could occasionally stoop. The claimant should have avoided all use of hazardous machinery and exposure to unprotected heights."

Step Four:    He was capable of performing his past relevant work.

(Doc. #6, *PageID* #s 444-57). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 457.

## V.  <u>Discussion</u>

Plaintiff contends that the ALJ erred by failing to find a severe mental impairment at Step Two and by failing to incorporate any corresponding limitations in his residual functional capacity assessment. Further, he erred in evaluating his symptom severity. The Commissioner maintains that substantial evidence supports the ALJ's decision.

6

### A.    Step Two

Plaintiff asserts that ALJ Barnes committed reversible error at step two of the sequential evaluation by finding that his mental-health conditions—pain disorder and dysthymic disorder—did not constitute severe impairments.  (Doc. #7, *PageID* #s 5866-68).  He contends that the ALJ's error is not harmless because the ALJ found that Plaintiff could perform his past relevant work as a director of marketing sales and, "any limitation accommodating [his] pain and mental health—such as a limitation to unskilled work or low-stress work—would likely eliminate his ability to perform this job."  *Id.* at 5868.

At step two of the five-step sequential evaluation process, the ALJ considers the "medical severity of [the claimant's] impairments."  20 C.F.R. § 404.1520(a)(4).  "An impairment or combination of impairments is not severe if it does not significantly limit [the applicant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a).  Basic work activities are defined as "abilities and aptitudes necessary to do most jobs."  *Id.* at § 404.1521(b).

The Sixth Circuit has construed step two as a "*de minimis* hurdle."  *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted).  Under this view, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."  *Id.* (citation omitted). The Court explained, "this lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice in the early 1980s of using the step two regulation to deny meritorious disability claims without proper

vocational analysis." *Id.* (citations omitted).  However, "the severity requirement may still be employed as an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint." *Long v. Apfel,* 1 F. App'x 326, 331 (6th Cir. 2001) (internal quotations and citations omitted).

In the present case, the ALJ found at step two that Plaintiff had several severe physical impairments but no severe mental impairments.  (Doc. #6, *PageID* #451). Substantial evidence supports the ALJ's findings.

When evaluating the severity of Plaintiff's mental impairments, the ALJ relied on the opinion of consultative examiner Dr. Jones.  He assigned her opinion "great weight" because it was consistent with the other medical evidence of record and Plaintiff's lack of mental-health treatment. *Id.*  The ALJ noted that Plaintiff told Dr. Jones that he believed he was disabled due to his physical impairments—not because of a mental disorder.  And, although Dr. Jones diagnosed pain disorder and dysthymic disorder, she did not find that those disorders would significantly limit his ability to work.  She opined that Plaintiff would be able to understand, remember, and carry out instructions in a work setting.  He has no significant limitations in his ability to sustain concentration and attention or to maintain persistence and pace to perform work-related duties.  He has no significant limitations in his ability to interact with other persons.  Further, he does not appear to have any significant limitations in his ability to cope with normal work stress.  The ALJ concluded that Dr. Jones' findings "do not reflect the existence of a 'severe' mental impairment." *Id*.

Plaintiff points out Dr. Jones assigned a global assessment of functioning score of

56, indicative of moderate symptoms or moderate difficulty in social, occupational, or

school functioning. According to Plaintiff, his GAF score "exceeds the low *de minimis*

threshold for establishing a severe impairment …." (Doc. #7, *PageID* #5867). However,

"the Commissioner 'has declined to endorse the [Global Assessment Functioning] score

for 'use in the Social Security and [Supplemental Security Income] disability programs,'

and has indicated that [Global Assessment Functioning] scores have no 'direct correlation

to the severity requirements of the mental disorders listings.''" *DeBoard v. Comm'r of*

*Soc. Sec.,* 211 F. App'x 411, 415 (6th Cir. 2006) (quoting *Wind v. Barnhart,* No. 04–

16371, 2005 WL 1317040, at *6 n. 5, 133 F. App'x 684 (11th Cir. June 2, 2005); and 65

Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)). Further, the fifth and most recent edition

of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) no longer uses the

GAF scale, in part due to "its lack of conceptual clarity (*i.e.,* including symptoms, suicide

risk, and disabilities in its descriptors) and questionable psychometrics in routine

practice." Liza H. Gold, *DSM-5 and the Assessment of Functioning: The World Health*

*Organization Disability Assessment Schedule 2.0,* 42 J. AM. ACAD. PSYCHIATRY & LAW

173, 174 (2014) (footnote omitted) (*available at* http://www.jaapl.org. Search by article

title). The recent rejection of the GAF scale by the psychiatric professionals who created

it and its lack of direct correlation with the requirements of the Commissioner's mental

disorders listings cast too dark a shadow over its reliability.

 The ALJ also relied on the opinions of the three state agency reviewing

psychologists, Dr. Fernandez, Dr. Tishler, and Dr. Rabold. (Doc. #6, *PageID* #451). Dr.

Fernandez found that Plaintiff had two non-severe mental impairments: affective

disorder and somatoform disorder.  *Id.* at 505.  She opined that Plaintiff had a mild restriction of activities of daily living and mild difficulties in maintaining concentration, persistence, or pace.  But, Plaintiff had no difficulties in maintaining social functioning and no repeated episodes of decompensation.  *Id*.  She concluded that Plaintiff's psychological state would not prevent him from functioning in a working environment at that time.  *Id*.

Dr. Tishler and Dr. Rabold found that Plaintiff had one severe mental impairment—affective disorder.  *Id.* at 521, 531.  However, they found that "there is insufficient evidence to assess the severity of the claimant's [mental health] conditions from 1/31/15-6/30/15."  *Id*.  Further, when considering whether Plaintiff's affective disorder met the "A" criteria of the Listing, both concluded, "There is insufficient evidence to substantiate the presence of a disorder."  *Id*.

Finally, the ALJ reasonably relied on Plaintiff's treatment records.  He acknowledged that Plaintiff was prescribed Wellbutrin for depression in 2015.  *Id.* at 450 (citation omitted).  However, the ALJ observed that Plaintiff's treatment notes indicated that Wellbutrin was also intended to aid with smoking cessation.  *Id*.  The ALJ found that this "seems to mitigate the severity of any existing mood disorder."  *Id*.  Further, Plaintiff testified that his medication was beneficial to alleviating occasional depression and told a healthcare provider that his mood is generally good.  *Id.* (citation omitted).  Together, this evidence supports the ALJ's conclusion that Plaintiff does not have any severe mental impairments.

However, even if the ALJ incorrectly found that Plaintiff had no severe mental

impairments, generally, an ALJ does not commit reversible error by finding a non-severe impairment as long as: (1) the ALJ also found that the claimant has at least one severe impairment; and (2) the ALJ considered both the severe and non-severe impairments at the remaining steps in the sequential evaluation. *See Maziarz v. Sec'y of Health and Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987); *see also Fisk v. Astrue,* 253 F. App'x 580, 583 (6th Cir. 2007); *Nejat v. Comm'r of Soc. Sec.,* 359 F. App'x 574, 577 (6th Cir. 2009); *Pompa v. Comm'r of Soc. Sec.,* 73 F. App'x 801, 803 (6th Cir. 2003) ("[O]nce the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps.").

As noted above, the ALJ found that Plaintiff had several severe impairments. Thus, if the ALJ considered Plaintiff's severe and non-severe impairments at the remaining steps, the ALJ did not commit reversible error.

The ALJ did consider Plaintiff's mental impairments when assessing his residual functional capacity. Specifically, he included "safety considerations … to address the possibility of concentration deficits due to pain and/or side effect[s] of narcotic pain mediation …." (Doc. #6, *PageID* #454). Accordingly, the ALJ determined that Plaintiff "should have avoided all use of hazardous machinery and exposure to unprotected heights." *Id.* Further, the ALJ considered Plaintiff's pain in connection with his physical impairments. As a result, the ALJ found that Plaintiff had the residual functional capacity to perform a reduced range of sedentary work. Because the ALJ considered Plaintiff's severe and non-severe impairments at the remaining steps, any error in determining that Plaintiff had no severe mental impairments is harmless.

11

Accordingly, Plaintiff's challenge to the ALJ's step-two findings lack merit.

**B.      Symptom Severity**

Plaintiff contends that the ALJ reversibly erred in evaluating his symptom severity.  (Doc. #7, *PageID* #s 5868-70).  In years past, this assessment would have delved into the murky realms of credibility.  *E.g., Rogers*, 486 F.3d 246-49; *cf. Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) ("The administrative law judge must … evaluate the applicant's credibility with great care.  His responsibility is all the greater because determinations of credibility are fraught with uncertainty…."  (citation omitted)).  More recently, the Social Security Administration eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination of an individual's character…."  Soc. Sec. R. 16-3p, 2017 WL 5180304, *2 (S.S.A. Oct. 25, 2017) (effective March 28, 2016).

The Social Security Administration uses a two-step process for evaluating an individual's symptoms.  First, the ALJ must determine whether an individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms.  *Id.* at *3.  Second, the ALJ must evaluate the intensity and persistence of the individual's symptoms and determine the extent to which the individual's symptoms limit her ability to perform work-related activities.  *Id.* at *4.  To do this, the ALJ must examine the entire case record, including the objective medical evidence; the individual's relevant statements; statements and other information provided by medical sources and others; and any other relevant evidence in the record.  *Id.* at *4-5.  In addition to all of the evidence, the ALJ should consider multiple factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *7-8; *see also* 20 C.F.R. § 404.1529(c)(3).  But not every factor will be discussed in every case.  If there is no evidence regarding one of the factors, that factor will not be discussed.  Soc. Sec. R. 16-3p, 2017 WL 5180304, *8.

In the present case, ALJ Barnes followed these steps.  He first determined that Plaintiff has medically determinable impairments—lumbar spine disorder with residual of fusion surgery, type II diabetes mellitus, degenerative joint disease of both knees with residuals of bilateral knee-joint replacement surgery, and moderate obesity—that could reasonably be expected to cause his alleged symptoms.

Turning to the second step, Plaintiff asserts that "the ALJ essentially only considered [his] limited activities of living and part-time 'sympathy' job in evaluating his symptom severity and pain, essentially ignoring the other material factors in his cursory, superficial analysis."  (Doc. #7, *PageID* #5869).  Plaintiff is correct that the ALJ did note that he helps maintain a household with his partner and minor child—including chores

13

such as cleaning, laundry, and grocery shopping.  (Doc. #6, *PageID* #456).  He also works on a part-time basis and enjoys woodworking as a hobby.  This was not improper because Plaintiff's daily activities are relevant to the ALJ's evaluation of his symptom severity.  *See* 20 C.F.R. § 404.1529(c)(3)(i); Soc. Sec. R. 16-3p, 2017 WL 5180304, *7; *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 392 (6th Cir. 2004) (The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain.).

Throughout his decision, ALJ Barnes referenced many factors relevant to Plaintiff's credibility.  Plaintiff largely ignores the ALJ's discussion of any other factors.  For instance, the ALJ found that there was no evidence of adverse side effects from treatment or medication that would have prevented him from working at the sedentary level of exertion on a regular and continuing basis.  (Doc. #6, *PageID* #456); *see* 20 C.F.R. § 404.1529(c)(3)(iv).  Additionally, the ALJ determined that restricting Plaintiff to a reduced range of sedentary exertion adequately addresses the location, duration, frequency, and intensity of his alleged symptoms as well as precipitating and aggravating factors—to the extent that the aggravating factors were supported by objective medical evidence and clinical findings during the time at issue.  (Doc. #6, *PageID* #456); *see* 20 C.F.R. § 404.1529(c)(3)(ii)-(iii).

The ALJ also considered Plaintiff's treatment history, concluding that is was not consistent with a finding of disability.  *See* 20 C.F.R. § 404.1529(c)(3)(v).  He explained (earlier in his decision) that recent physical therapy treatment records from Beavercreek Health Center confirm that Plaintiff's condition continued to improve since his fusion

14

surgery.  (Doc. #6, *PageID* #454) (citation omitted).  It was noted that he can walk as far as one-half mile.  *Id.* (citation omitted).  The ALJ further recognized that the record-reviewing physicians' opinions were overly optimistic.  And in view of Plaintiff's surgical history, he concluded, "it is found that a more plausible estimation of his capacity for lifting, standing, walking, and sitting is consistent with the actual definition of sedentary exertion."  *Id.*

Further, to account for Plaintiff's testimony that he needed to alternate positions occasionally, ALJ Barnes found that he needed the opportunity to alternate positions between sitting and standing every sixty minutes.  *Id.*; *see* 20 C.F.R. § 404.1529(c)(3)(vi).

In sum, ALJ Barnes evaluated Plaintiff's symptom severity as set for in the Regulations and Social Security Ruling 16-3p.  He reasonably weighed the evidence and concluded Plaintiff is not under a disability.  Substantial evidence therefore supports his conclusions.

For the above reasons, Plaintiff's Statement of Errors lacks merit.

**IT IS THEREFORE RECOMMENDED THAT**:

1.    The ALJ's non-disability decision be affirmed; and

2.    The case be terminated on the Court's docket.

June 5, 2020                                    *s/Sharon L. Ovington*
                                               Sharon L. Ovington
                                               United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).